## HILDRETH *v.* PINKERTON ACADEMY.

The trustees of a fund appointed for the support of a school, and, among other things, for hiring a teacher, may, when there is occasion for dismissing such teacher and retaining a new one to succeed him, agree with the incumbent, for an increased rate of compensation, to retain his office at the will of the trustees, and until such successor shall be appointed.

It is a good consideration for an agreement to pay the teacher such increased compensation that he consents to hold his place at the will of the trustees, instead of holding it as before, from year to year, upon the ground that such change in the tenure of his situation is a detriment to himself and, under the circumstances, a benefit to the objects of the trust.

The rights of a party under a contract are not impaired by his expressing the opinion that he has no such rights, provided others have not acted upon the faith of such expressions.

ON the trial, it appeared in evidence that the defendants were incorporated by an act of the Legislature of this State, passed June 15th, 1814. In the preamble of said act it is recited that John Pinkerton, Esq., of Londonderry, being desirous of giving to trustees, in said act to be appointed, certain lands or personal estate, to be by said trustees forever appropriated and expended for the support of a public school or academy in said Londonderry,—therefore it is enacted that there shall be established in said town an academy, for the purpose of promoting piety and virtue, and for the education of youth in such of the liberal arts and sciences or languages, as the trustees in the act appointed shall direct; that certain persons therein named shall be trustees of said academy, and shall be incorporated into a body politic by the name of the Pinkerton Academy; that said trustees, the longest livers and survivors of them, and their succesors, shall be the true and sole visitors, trustees and governors of said academy, with full power to elect such officers of the academy as they should judge necessary and convenient, and to make and ordain such laws, orders and rules for the government thereof as to them

might seem fit, the same not being contrary to the constitution or laws of the State.

It further appeared in evidence that the plaintiff, for many years prior to the 24th of September, 1845, had been employed by the defendants as principal instructor in said academy, at an annual salary of $700. On the said 24th of September, a meeting of the board of trustees was duly held, at which proceedings were had as set forth in the following extract from the records of said trustees:

" September 24, 1845. The trustees of the Pinkerton Academy met according to adjournment. The executive committee, who, in accordance with the suggestion of E. L. Parker, at the last meeting, were informally requested by a majority of the trustees to see Mr. A. F. Hildreth, in relation to the expediency of resigning his charge as principal of the academy, made their report,—that they had seen Mr. Hildreth, and that the following resignation, with the conditions annexed, was the result of their meeting:

' To the trustees of Pinkerton Academy, Gentlemen :—I hereby tender to you my resignation as principal of Pinkerton Academy, to take effect at any future time when the trustees shall provide a suitable person to take charge of the institution.

(Signed) A. F. HILDRETH.

Derry, August 14, 1845.

" In consideration of the above resignation of Mr. A. F. Hildreth as principal of Pinkerton Academy, we, as executive committee of said academy, promise in behalf of the trustees to pay said Hildreth one year's salary of $700, on condition that he continues six months or less as principal; and if he should continue any period beyond that time, said Hildreth shall have six months' salary beyond the time he continues his instruction in said academy, and the above

sum is to be paid at the time of his leaving the academy.

(Signed)        JAMES THORN,
SAMUEL ADAMS,
I. B. DAY,
Executive Committee.''

And thereupon it was voted by the trustees that Mr. Hildreth's resignation as principal of the Pinkerton Academy be accepted, upon the condition that the same shall not take effect prior to the close of the current academical year, and that the propositions of the executive committee, predicated upon such resignation, be ratified and confirmed."

It further appeared in evidence that the plaintiff continued in charge of said academy as principal from said 24th of September until the close of the then current academical year, in July, 1846, more than six months after said 24th of September, when said Hildreth ceased to act as such instructor.

It further appeared that the defendants then paid to the plaintiff his salary of $700, for the year then ending, for which the plaintiff gave the following receipt :

" Derry, July 14, 1846.

Receivd of Wm. Choate, treasur of Pinkerton Academy, seven hundred dollars, in full for my salary.

(Signed)        A. F. HILDRETH."

It further appeared that a meeting of the board of trustees was duly held on the 27th of July, 1847, at which the following vote was passed.

" Voted, that the treasurer be and he is hereby authorized and directed to pay A. F. Hildreth $100 a year until his claim, founded on the vote of the trustees, passed on the 24th of September, 1845, and the interest thereon, shall be satisfied, the first payment to be made in one year from this time."

It further appeared that on the 28th of March, 1848, the plaintiff called on the treasurer of the academy for money, and received of him $98, and gave him a receipt therefor as follows :

" Received of Wm. Choate, treasurer of Pinkerton Academy, ninety-eight dollars, in full of my claim for one hundred dollars, agreeably to a vote passed by the trustees, July 27, 1847.

(Signed)        A. F. HILDRETH.

Derry, March 28, 1848.

That on the 16th of March, 1849, he again called for another payment, and received of the treasurer $98 more, for which he gave the following receipt :

" Rec'd of Wm Choate, treasurer of the Pinkerton Academy, ninety-eight dollars, in full of my claim for one hundred dollars, agreeably to a vote passed by the trustees, July 27, 1847, this being the second instalment.

(Signed)        A. F. HILDRETH.

Derry, March 26, 1849."

That on both occasions of receiving said sums of $98 each, the plaintiff discounted $2 from the $100, which he claimed, because the payments were made about four months before due; that at the time of the receipt of the first of said payments, he had a copy of the vote of the trustees, passed on the 27th of July, 1847, and claimed that the payments were to be made in accordance with that vote; and that on the occasion of receiving his salary of the treasurer in July, 1846, he made no claim to him for any thing beyond that; but in February, 1852, in a conversation with the treasurer, held after this suit was brought, stated that he knew he had no legal claim for any thing beyond, and had never pretended that he had, and that he should look to the records of the trustees for all he expected to recover, but was

not understood to waive any claim he had by virtue of the records of the trustees.

It further appeared in evidence that at a meeting of the board of trustees, held on the 12th of November, 1850, the following vote was passed :

" Voted, that the votes passed by this board in 1845 and 1847, authorizing the payment of money to Mr. A. F. Hildreth, in consideration of his resignation as principal of the Pinkerton Academy, be rescinded and revoked, and that no further payment be made to said Hildreth by virtue of those votes."

It further appeared in evidence that in the spring of 1850, the plaintiff, then residing in a house about one-third of a mile distant from said academy, published a circular, as follows :

" Family Boarding School for Boys,—Derry Village, N. H.

The undersigned, who, as principal of the Pinkerton Academy, has had many years experience in teaching, will receive into his family from eight to ten lads, for the purpose of preparing them for college or the counting-room. He will not only devote his exclusive attention to the studies and recitations of his pupils during the hours assigned for that purpose, but will also pay particular attention to their deportment during those of relaxation and exercise. While resident in his family, they will at all times, both in health and sickness, be treated with parental care and kindness. They will be required, in company with himself and family, to attend public worship on the Sabbath. No lad will be received or retained whose habits are known to be vicious. The course of instruction will be thorough ; adapted to the capacity of the pupil and best suited to promote the exercise of his intellectual and moral powers. The Latin and Greek will be taught according to the much and justly admired system of Ollendorf, which it is believed greatly facilitates the progress of the pupil in acquiring a knowledge of these languages and tends to form, at the commencement

of the collegiate course, a taste for the study of the classics.
Imitation and frequent repetition, the means by which chil-
dren learn their own language, should be practised in learn-
ing the languages of the ancient Greeks and Romans.   In
connection with other studies, the  elements of vocal music
will be taught.   Particular attention will be paid to the ele-
ments of elocution and  good reading.   Being subjected to
the constant watch and care of their instructor, parents may
feel confident that the moral habits of their sons will be duly
guarded and the proper  improvement  of  their  time secure.
The year will be  divided into three terms, commencing the
first  Wednesday  in  September,  the  last  Wednesday  in
December, and  the  last  Wednesday in  April,—with three
vacations,—two of  two weeks each  and  one of  six weeks.
Tuition and board, including washing, fuel and light, will
be $50 per term.   The school will be  opened on  Wednes-
day, May 15, 1850.   As the  first  term  will be only eleven
weeks, the expense will be but $38.
                    (Signed)          A. F. HILDRETH."

     That  agreeably to said  notice, the  plaintiff kept in his
said house a family school for boys from  about said 15th of
May, 1850, until after the  commencement of this action,
and had in his said school from six to ten pupils during the
whole of  said time.
     The defendants contended that upon  the foregoing evi-
dence no contract was proved upon which the plaintiff was
entitled to recover, and that if a contract were shown upon
which the plaintiff  could  recover, the circumstances proved
in relation to the school kept  by the  plaintiff, in the imme-
diate vicinity of  Pinkerton  Academy, constituted a defence
to the action ; but the court, being  inclined to  the opinion
that the evidence proved a contract upon which the plaintiff
could maintain an action, and that those circumstances con-
stituted no defence  to  the action, a  verdict  was  taken by
consent for the plaintiff, for  the  balance of  six months' sal-

ary, with interest, being $150, and interest thereon, according to the votes of the 24th September, 1845, and of the 27th of July, 1847, being $210,75. Said verdict is to be set aside and a verdict to be entered for the defendants, or the verdict amended or judgment entered on the verdict, according to the opinion of this court.

*Stickney & Tuck*, for the plaintiff.

The charter invests the trustees with the ordinary powers of such officers over the funds and property of literary institutions, enabling them to hire teachers, and do other things with the funds, promotive of the object in view.

The proceedings of the trustees, September 24th, 1845, ratifying and confirming the acts of their executive committee constitute a binding contract between them and the plaintiff.

The consideration for the agreement of the trustees to pay $350 beyond the ordinary salary, was the agreement of Mr. Hildreth to continue his services as principal indefinitely, according to the convenience of the trustees. By Mr. Hildreth's agreement, he was bound to stay, while the trustees were not bound to retain him, unless for their interest or convenience. On this point, of such promise being an adequate consideration for the promise set forth in the declaration, see *Farmer* v. *Stuart*, 2 N. H. Rep. 100; *Underhill* v. *Gibson & a.* 2 N. H. Rep. 352; *Violett* v. *Patten*, 5 Cranch. 142, 150, cited in U. S. Dig. p. 99.

On the point that the confessions of the plaintiff, after the commencement of the suit, that he had no claim, cannot prejudice his rights, see *Warden* v. *Tucker*, 7 Mass. Rep. 449; *Freeman* v. *Boynton*, 7 Mass. Rep. 483; *May* v. *Coffin*, 4 Mass. Rep. 347.

*Marston* and *Porter*, for the defendants.

There was no valid consideration for the promise upon which this action is founded.

It was, in fact, an undertaking to pay the plaintiff a half year's salary of $350, to resign his situation.

The trustees of the academy were trustees of the fund given by the founder, and they were not authorized to deal with it in that manner.

They could not settle pensions upon their teachers, or vote gratuities to them.

Both parties understood the half year's salary to be a gift, and neither supposed there was any legal obligation to pay it.

The case finds that the plaintiff so said.

WOODS, J.   The only material question touching the right of the plaintiff to recover in this action is, whether there was a legal consideration for the engagement which the trustees of Pinkerton Academy made with him on the 24th of September, 1845.   The power of the trustees to deal with the fund is undoubtedly limited to the uses and objects for which the fund was committed to their management by the founder of the institution, and they cannot legally appropriate it to granting gratuitous pensions or making presents.   But their control over the property is, as certainly, coextensive with those objects, and whatever engagements they make within that scope they may be required to use the fund to fulfil.

Among the very plain and unquestionable powers and duties which belong to those trustees, is the power and duty of employing and paying suitable teachers, in such manner that there may be an uninterrupted succession in the office, and that the course of instruction in the school may not be broken up.   In doing this, there is required of them the exercise of the prudence, foresight and just economy which belong to men who manage their own affairs well.   In this respect, great confidence has been reposed in them by the founder, and it would be a total perversion of his purposes and of the policy of the law, in protecting from vio-

lence and officious interference of authority these beneficent provisions for society, to disturb them in the exercise of the functions which have been conferred upon them, so long as there is no evidence or surmise of fraud or gross incompetency.

In the exercise of their office, the trustees, on the 24th of September, thought fit to provide for a change of preceptors of the academy, to take place at a time not then distant; and this they wisely thought fit to do in a manner that should secure the office against a vacancy, and the school against interruption. To effect this, they entered into a contract with the plaintiff, which has become the subject of the present action. The effect of it, when divested of the terms of courtesy in which it was framed, is this. The plaintiff agrees to remain in office as principal of the institution, performing its appropriate duties, till such time as the trustees shall appoint a successor, and then to resign. The trustees, on their part, agree, in consideration that the plaintiff consents to remain in office, at their will and election, to pay him something more than the ordinary salary that had been paid, when the engagement had been for a year at a time.

That such a change in the terms of the plaintiff's engagement was one which the trustees might well have deemed a proper, prudent and necessary one to make, in view of providing for a change of incumbents, as furnishing those facilities for so doing without hazarding the continuance of the school, is, in our apprehension, a clear proposition. That the change subjected the plaintiff to inconveniences resulting from an uncertainty as to the time his employment would continue, rendering the increase of his compensation most reasonable to be exacted on his part, and to be conceded on the part of the trustees, seems to us equally clear.

The change secured to the academy a plain benefit, and was, as to the plaintiff, attended with obvious inconvenience and detriment, and, in either view, constituted a *good*

and valid consideration for the undertaking on which the action was brought.

It is not remarkable that the plaintiff should have forgotten or have never understood the extent and nature of the rights which grew out of the transaction of September 24, 1845, and should at any time have expressed an erroneous opinion concerning them. But this in no wise impairs his rights, provided his statements have not misled other parties, and caused them to pursue a different course from the one they would have pursued if the truth had been known to them.

The plaintiff, having resigned his connection with the Pinkerton Academy, with the approbation of the trustees, set up a private school. The bearing of this fact upon the case has not been pointed out in the notes furnished by counsel, neither is it perceived by the court. The plaintiff was a teacher by profession, and no reason appears to have existed why he might not have pursued his calling in the manner and at the time and place he chose to do so.

*Judgment on the verdict.*